# MAYER ET AL. *v.* HELLMAN.

An assignment by an insolvent debtor of his property to trustees for the equal and common benefit of all his creditors is not fraudulent, and, when executed six months before proceedings in bankruptcy are taken against the debtor, is not assailable by the assignee in bankruptcy subsequently appointed; and the assignee is not entitled to the possession of the property from the trustees.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

The plaintiff in the court below is assignee in bankruptcy of Bogen and others, appointed in proceedings instituted against them in the District Court of the United States for the Southern District of Ohio; the defendants are assignees of the same

parties, under the assignment law of the State of Ohio; and the present suit is brought to obtain possession of property which passed to the latter under the assignment to them. The facts as disclosed by the record, so far as they are material for the disposition of the case, are briefly these: On the 3d of December, 1873, at Cincinnati, Ohio, George Bogen and Jacob Bogen, composing the firm of G. & J. Bogen, and the same parties with Henry Müller, composing the firm of Bogen & Son, by deed executed of that date, individually and as partners, assigned certain property held by them, including that in controversy, to three trustees, in trust for the equal and common benefit of all their creditors. The deed was delivered upon its execution, and the property taken possession of by the assignees.

By the law of Ohio, in force at the time, when an assignment of property is made to trustees for the benefit of creditors, it is the duty of the trustees, within ten days after the delivery of the assignment to them, and before disposing of any of the property, to appear before the probate judge of the county in which the assignors reside, produce the original assignment, or a copy thereof, and file the same in the Probate Court, and enter into an undertaking payable to the State, in such sum and with such sureties as may be approved by the judge, conditioned for the faithful performance of their duties.

In conformity with this law, the trustees, on the 13th of December, 1873, within the prescribed ten days, appeared before the probate judge of the proper county in Ohio, produced the original assignment, and filed the same in the Probate Court. One of the trustees having declined to act, another one was named in his place by the creditors, and appointed by the court. Subsequently the three gave an undertaking with sureties approved by the judge, in the sum of $500,000, for the performance of their duties, and then proceeded with the administration of the trust under the direction of the court.

On the 22d of June of the following year, more than six months after the execution of the assignment, the petition in bankruptcy against the insolvents was filed in the District Court of the United States, initiating the proceedings in which the plaintiff was appointed their assignee in bankruptcy. As

such officer, he claims a right to the possession of the property in the hands of the defendants under the assignment to them. Judgment having been rendered against them, they sued out this writ of error.

*Mr. W. T. Forrest* for the plaintiffs in error.

Deeds of trust or assignments made in good faith, and for the common benefit of all the creditors of a debtor, are in aid of the provisions of the Bankrupt Law, and not contrary to its spirit. They have been said "to carry out the equitable provisions of a bankrupt law through the medium of a private contract," and are a cheap, expeditious, and convenient mode of arriving at the objects intended by that law. *Sedgwick* v. *Place*, 1 Nat. Bank. Reg. 204; *Tiffany* v. *Lucas*, 15 Wall. 410; *Clark* v. *Iselin*, 21 id. 360; *Michael* v. *Post*, id. 398; *Langley* v. *Perry*, 2 Nat. Bank. Reg. 180. The statute of Ohio, entitled "An Act regulating the mode of administering assignments in trust for the benefit of creditors," has none of the distinctive features of an insolvent or a bankrupt law. It does not purport or attempt to discharge the debtor either from arrest or imprisonment, or to free him from future liability. His after-acquired property is liable to his creditors to the same extent in every particular as if he had not made an assignment in trust for his creditors. Deeds of trust are not the creatures of that law. They existed in Ohio, and were constantly recognized and used for fifty years before it was passed. They derive their force and effect from the common law, and not from the statute. The statute does not give such deeds any power or validity. All it does is to prescribe a mode of enforcing the trust. It found them already established, and simply provided for the better security of the creditors by requiring that the trustees should give bond for the faithful discharge of their trusts, and should file statements showing what had been done, and provided a simple and speedy means of enforcing and regulating the trust, which, before that act was passed, had to be sought through a court of chancery. *Cook et al* v. *Rogers*, Am. Law Reg. July, 1875, 453; *In re Hawkins*, 2 Nat. Bank. Reg. 122.

*Mr. Adam A. Kramer, contra.*

The main question involved in this case is, whether the adjudication in bankruptcy had the effect of suspending the

further operation of the State assignment laws. The jurisdiction of the United States courts under the Bankrupt Act cannot be concurrent with that of the State courts under the assignment laws of the State. It must be exclusive in that court, which only can and should administer the estate and adjust the affairs of a bankrupt. *Sturges* v. *Crowningshield*, 4 Wheat. 122; *Ogden* v. *Sanders*, 12 id. 213, 214; *Griswold* v. *Pratt*, 9 Met.; *Larrabee* v. *Talbot*, 5 Gill, 426; *Ex parte Lucius Eames*, 2 Story, C. C. 322; *In re Reynolds*, 9 Nat. Bank. Reg. 50; *Allen & Co.* v. *Montgomery*, 10 id. 503. The Bankrupt Act was intended, and must be presumed, to afford the best mode of administering the estates of insolvents. It will not tolerate an attempt to carry into effect any other plan inconsistent therewith. *Cookingham* v. *Morgan*, 5 B. R. 16; 7 Blatch. 480.

It is not claimed, that, although the assignment was a valid, legal, and fair one for the benefit of all the creditors, the subsequent adjudication in bankruptcy rendered it invalid, illegal, and unfair, but that it had the effect of *suspending* its *further* operation.

The Bankrupt Act of March 2, 1867, as soon as it went into operation, *ipso facto* suspended all action arising under State laws. *Commonwealth* v. *O'Hara*, 1 Nat. Bank. Reg. 19; *In re Krogman*, 5 id. 116.

It is immaterial whether the statute of Ohio, under which the assignment was made, is properly an insolvent law. It, however, certainly purports and contemplates the control and disposition of the estate of persons who are unable to pay their debts, and are therefore *insolvent*. It is an *insolvent* act, because it presumes the debtor to be unable to pay his debts; but it is not a *bankrupt* act in the strict sense, for it does not purport to *discharge* the debtor from paying them.

The most important authority on this question, the one containing the clearest reasoning, is the opinion of the court, per Blodgett, J., *In re Merchants' Insurance Company*, 6 Nat. Bank. Reg. 43:—

"It seems clear to us, that in so far as a State law attempts to administer on the effects of an insolvent debtor, and distribute them among his creditors, it is to all intents and purposes an insolvent law, although it may not authorize a discharge of a debtor from

furtbe liability; . . . and, when insolvency exists so as to make the debtor a proper subject for the operation of the Bankrupt Act, the exclusive jurisdiction of the Bankrupt Court attaches,.and the State court and those acting under its mandate must surrender the control of its assets."

· By *insolvency*, as used in the provisions of the Bankrupt Act when applied to traders and merchants, is meant *their inability to pay their debts* as they become due in the ordinary course of their business.·

This is the *legal* definition of the term, and such has been the universal construction of it by the Federal courts. *In' re Goldschmidt*, 3 B. R. 165 ; *In re Freeman,* 4 B. R. 64 ; *In re Lutgens,* 7 Pac. L. R, 89 ; *In re Alonzo Pearce*, 21 Vt. 611 ; *In re Brodhead*, 2 B. R. 278 ; *Smith* v. *Ely*, 1 N. Y. Leg. Obs. 343 ; *Sawyer* v. *Turpin*, 5 ︑. R. 339 ; *In re Walton et al.*, Deady, 442 ; s. c., Wall. 584.

MR. JUSTICE. FIELD delivered the opinion of the court.

The validity of the claim of the assignee in bankruptcy depends, as a matter of course, upon the legality of the assignment made under the laws of Ohio. Independently of the Bankrupt Act, there could be no serious question raised as to its legality. The power which every one possesses over his own property would justify any such disposition as did not interfere with the existing rights of others; and an equal distribution by a debtor of his property among his creditors, when unable to meet the demands of all in full, would be deemed not only a legal proceeding, but one entitled to commendation. Creditors have a right to call for the application of the property of their debtor to the satisfaction of their just demands; but, unless there are special circumstances giving priority of right to the demands of one creditor over another, the rule of equity would require the equal and ratable distribution of the debtor's property for the benefit of all of them. And so, whenever such a disposition has been voluntarily made by the debtor, the courts in this country have uniformly expressed their approbation of the proceeding. The hinderance and delay to particular creditors, in their efforts to reach before others the property of the debtor, that may follow such a conveyance, are regarded as unavoidable

incidents to a just and lawful act, which in no respect impair the validity of the transaction.

The great object of the Bankrupt Act, so far as creditors are concerned, is to secure equality of distribution among them of the property of the bankrupt. For that purpose, it sets aside all transactions had within a prescribed period previous to the petition in bankruptcy, defeating, or tending to defeat, such distribution. It reaches to proceedings of every form and kind undertaken or executed within that period by which a preference can be secured to one creditor over another, or the purposes of the act evaded. That period is four months for some transactions, and six months for others. Those periods constitute the limitation within which the transactions will be examined and annulled, if conflicting with the provisions of the Bankrupt Act.

Transactions anterior to these periods are presumed to have been acquiesced in by the creditors. There is sound policy in prescribing a limitation of this kind. It would be in the highest degree injurious to the community to have the validity of business transactions with debtors, in which it is interested, subject to the contingency of being assailed by subsequent proceedings in bankruptcy. Unless, therefore, a transaction is void against creditors independently of the provisions of the Bankrupt Act, its validity is not open to contestation by the assignee, where it took place at the period prescribed by the statute anterior to the proceedings in bankruptcy. The assignment in this case was not a proceeding, as already said, in hostility to the creditors, but for their benefit. It was not, therefore, void as against them, or even voidable. Executed six months before the petition in bankruptcy was filed, it is, to the assignee in bankruptcy, a closed proceeding.

The counsel of the plaintiffs in error have filed an elaborate argument to show that assignments for the benefit of creditors generally are not opposed to the Bankrupt Act, though made within six months previous to the filing of the petition. Their argument is, that such an assignment is only a voluntary execution of what the Bankrupt Court would compel; and as it is not a proceeding in itself fraudulent as against creditors, and does not give a preference to one creditor over another, it conflicts

with no positive inhibition of the statute. There is much force in the position of counsel, and it has the support of a decision of the late Mr. Justice Nelson, in the Circuit Court of New York, in *Sedgwick* v. *Place*, First Nat. Bank. Reg. 204, and of Mr. Justice Swayne in the Circuit Court of Ohio, in *Langley* v. *Perry*, 2 Nat. Bank. Reg. 180. Certain it is that such an assignment is not absolutely void; and, if voidable, it must be because it may be deemed, perhaps, necessary for the efficiency of the Bankrupt Act that the administration of an insolvent's estate shall be intrusted to the direction of the District Court, and not left under the control of the appointee of the insolvent. It is unnecessary, however, to express any decided opinion upon this head; for the decision of the question is not required for the disposition of the case.

In the argument of the counsel of the defendant in error, the position is taken that the Bankrupt Act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the State. The answer is, that that statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments: it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties; it requires them to file statements showing what they have done with the property; and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment: it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of any statutory provision. The assignment in this case must, therefore, be regarded as though the statute of Ohio, to which reference is made, had no existence. There is an insolvent law in that State; but the assignment in question was not made in pursuance of any of its provisions. The position, therefore, of counsel, that the

Bankrupt Law of Congress suspends all proceedings under the Insolvent Law of the State, has no application.

The assignment in this case being in our judgment valid and binding, there was no property in the hands of the plaintiffs in error which the assignee in bankruptcy could claim. The assignment to them divested the insolvents of all proprietary rights they held in the property described in the conveyance. They could not have maintained any action either for the personalty or realty. There did, indeed, remain to them an equitable right to have paid over to them any remainder after the claims of all the creditors were satisfied. If a contingency should ever arise for the assertion of this right, the assignee in bankruptcy may perhaps have a claim for such remainder, to be applied to the payment of creditors not protected by the assignment, and whose demands have been created subsequent to that instrument. Of this possibility we have no occasion to speak now.

> *Our conclusion is, that the court below erred in sustaining the demurrer to the defendant's answer; and the judgment of the court must, therefore, be reversed, and the cause remanded for further proceedings.*