REED *v.* McIntyre.

A., in due course of legal proceedings, recovered, March 14, judgment against B., a merchant who, the preceding day, had made an assignment of all his property for the benefit of his creditors. An execution was forthwith sued out upon the judgment, and levied upon certain goods, part of the property so assigned. On the petition of a creditor, filed March 31, alleging that B. had committed acts of bankruptcy by fraudulently suspending and not thereafter resuming payment of his commercial paper due January 1, and by making said assignment, B. was by the proper court adjudged to be a bankrupt, and his estate conveyed in the usual form by the register to the assignee in bankruptcy, who filed his bill against A. to determine the title to the proceeds of the sale of the goods, which by consent had been made without prejudice to the rights, if any, of A. by the levy of the execution. Upon the hearing it appeared by the proofs that the assignment by B. was made in good faith to secure the distribution of his property among all his creditors. *Held*, that A. acquired no priority by the levy, and that the assignee in bankruptcy is entitled to the proceeds.

APPEAL from the Circuit Court of the United States for the District of Minnesota.

William H. Shuey, a merchant at St. Paul, Minn., executed, March 13, 1874, a deed of assignment conveying his entire property, including his stock in trade, to William S. Combs in trust, for the equal benefit of all his creditors. Upon the same day, immediately after the acknowledgment of the deed, Combs entered upon the discharge of his duties as assignee, and took possession of Shuey's stock. During the succeeding day, Mrs. Reed obtained a judgment in one of the State courts of Minnesota against Barnard and Shuey, for the sum of $5,120.45. An execution was immediately issued, and the sheriff forthwith levied it upon the same goods of which Combs had taken possession. Upon the occasion of the levy, the officer was notified of the assignment and Combs's possession. On the 31st of March, 1874, Mrs. Sanderson, a creditor of Shuey, by petition filed in the proper court, prayed that he might be declared a bankrupt, upon two grounds: 1st, that being a merchant and trader, he had, Jan. 1, 1874, fraudulently stopped and suspended payment of his commercial paper, to wit, the promissory note held by her, and had not resumed payment thereof; 2d, that, March 13, 1874, being then insolvent, he made the

said assignment to Combs with intent to hinder, delay, and defraud his creditors, which she alleged was an act of bankruptcy. Before the return of the rule which issued upon this petition, Shuey, by written stipulation, filed in court, without admitting or denying the alleged grounds of bankruptcy, consented that an adjudication might be entered against him. This was at once done, the order reciting that, in consideration of Shuey's written consent, and of the proofs, in the cause, the facts set forth in the petition were found to be true; and it was therefore adjudged that he was a bankrupt, within the meaning of the act of Congress. McIntyre was duly selected as assignee, and to him the usual conveyance by the register was made. Afterwards, to prevent a sacrifice of the goods at a forced sale, and to save expense, a written agreement was made between Mrs. Reed and McIntyre, whereby the latter took possession of and sold all the property levied upon, but without prejudice to such rights as she had acquired under and by virtue of her execution, or to her right to raise any question in a suit in equity, to be promptly instituted, which she might have raised if that property had remained in the custody of the sheriff.

The present suit was commenced by a bill in equity filed by McIntyre for the purpose of obtaining a judicial determination of Mrs. Reed's rights in the property levied on, or rather in its proceeds. She claimed that to the extent of the judgment against Shuey her rights acquired by the levy are superior to those of the assignee in bankruptcy. That view was controverted by him, and a decree having been rendered in his favor, Mrs. Reed appealed.

*Mr. E. C. Palmer* for the appellant.

Reed obtained the judgment against Barnard and Shuey in the due course of proceedings at law to recover a *bona fide* subsisting debt, and the execution thereon was duly issued. The levy on the goods in question by the sheriff having been regular, his possession and right of possession thereunder were *prima facie* lawful. *Wilson* v. *City Bank*, 17 Wall. 473; *National Bank* v. *Warren*, 96 U. S. 539.

The adjudication in bankruptcy did not affect the levy or impair the lien acquired thereby. The assignee in bankruptcy took the title to the goods subject to all existing valid liens

and incumbrances on them. *Kelly* v. *Scott*, 49 N. Y. 595; *Cook* v. *Tullis*, 18 Wall. 332; *Hayes* v. *Dickinson*, 16 N. Y. Sup. Ct. 277; *In re Hambright*, 2 Nat. Bank. Reg. 498; *Mc-Donald, Assignee*, v. *Moore*, 15 id. 26; *Dolson* v. *Kerr, Sheriff*, 16 id. 405; *Mitchell* v. *Winslow*, 2 Story, 630; *McLean* v. *Moline*, 3 McLean, 201; *Donaldson, Assignee*, v. *Farwell et al.*, 93 U. S. 631; *Jerome* v. *McCarter*, 94 id. 734; *Goddard* v. *Weaver*, 1 Wood, 260.

Combs is not a party to this suit, and makes no claim to the goods or to their proceeds. The assignment to him of March 14 was declared void, as having been made with the intent to hinder, delay, and defraud creditors, and as an act of bankruptcy. It presents, therefore, no obstacle to the effectual maintenance of Reed's rights under the levy.

Mr. *E. G. Rogers* and *Mr George L. Otis*, contra, cited *Mayer et al.* v. *Hellman*, 91 U. S. 496; *Johnson, Assignee*, v. *Rogers et al.*, 15 Nat. Bank. Reg. 1; *In re Steele et al.*, 16 id. 105; *In re M. J. Nelson*, id. 312; *In re James Croughwell*, 17 id. 338; *In re Arthur A. Hull*, 18 id. 5; *In re John C. Walker*, id. 56; *Dodge* v. *Sheldon*, 6 Hill (N. Y.), 9; *Seaman* v. *Stoughton*, 3 Barb. (N. Y.) Ch. 348; *Everett* v. *Stone*, 3 Story, 446; *Penniman* v. *Cole et al.*, 8 Metc. (Mass.) 496.

Mr. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

It is stated in the printed argument of counsel for the appellee, and the statement is not controverted by opposing counsel, that at the date of the assignment to Combs there was no statute of Minnesota relating to assignments by debtors for the benefit of creditors.

In determining, therefore, the validity and effect of the assignment in question, we must look to the doctrines of the common law and to the provisions of the Bankrupt Act.

The assignment to Combs was, according to the evidence in this cause, made in good faith for the purpose of securing an equitable distribution of the debtor's property for the benefit of all of his creditors, including the appellant, and not with any intent to hinder, delay, or defraud them. The right of a debtor at common law to devote his whole estate to the satis-

faction of the claims of creditors results, as Mr. Chief Justice Marshall declares, " from that absolute ownership which every man claims over that which is his own." *Brashear* v. *West and Others*, 7 Pet. 608 ; *Mayer et al.* v. *Hellman*, 91 U. S. 496. Assignments of property for such purposes, not made with the intent to hinder, delay, or defraud creditors, were upheld at common law, even where certain creditors were preferred in the distribution of the debtor's effects.   Nor, according to the doctrines of the common law, could the validity of the assignment to Combs be assailed, simply because its effect was to prevent the appellant from obtaining by judgment and executi n a priority and preference over other creditors.   An assignment which had the effect to delay a creditor in the enforcement of his demand by the ordinary process of law was not, for that reason alone, fraudulent and void.   If not made with the intent to hinder, delay, or defraud creditors, it was sustained at common law.   Such an intent was often conclusively presumed, if the assignment contained provisions inconsistent with good faith, or so unreasonable and unusual in their character as to justify the conclusion that it was, in the language of Lord Mansfield in *Cadogan* v. *Kennett* (Cowp. 432, 434), a mere " trick or contrivance to defeat creditors."   But where its provisions were consistent with an honest purpose to deal fairly and justly with them, — the deed reserving for the benefit of the debtor or his family no control over or interest in the property, and imposing no improper restrictions upon its speedy sale and distribution in satisfaction of the debts, — the consequent temporary interference with the prosecution by particular creditors of their claims by the ordinary legal remedies, was regarded at common law as a necessary and unavoidable incident in the discharge by a debtor of his duty to creditors. *Mayer et al.* v. *Hellman, supra*.   Such interference was not regarded as hindrance and delay, within the meaning of the statutes against fraudulent conveyances.   This precise question arose in *Pickstock* v. *Lyster*, 3 Mau. & Sel. 371.   In that case, a debtor, being sued, made an assignment by deed of all of his effects for the equal benefit of creditors.   The jury having been instructed that they must find the deed void if made with the intent to defeat the plaintiff in his execution, returned

a verdict in his favor. But the verdict was set aside upon the ground that the jury were misdirected. Lord Ellenborough held that the assignment was "to be referred to an act of duty rather than of fraud, when no purpose of fraud is proved. The act arises out of a discharge of the moral duties attached to his character of debtor to make the fund available for the whole body of creditors. . . . It is not the debtor who breaks in upon the rights of the parties by this assignment, but the creditor who breaks in upon them by proceedings in his suit. I see no fraud : the deed was for the fair purpose of equal distribution." In the same case, Bayley, J., said : " It seems to me that this conveyance, so far from being fraudulent, was the most honest act the party could do. He felt that he had not sufficient to satisfy all of his debts, and he proposed to distribute his property in liquidation of them; this was not acceded to, for the plaintiff endeavored by legal process to obtain his whole debt, the obtaining of which would have swept away the property from the rest of the creditors." To the like effect are the authorities generally, as will be seen from an examination of the adjudged cases cited in Burrill's Treatise on Voluntary Assignments (3d ed.), sect. 319 *et seq.*, and in 1 American Leading Cases (5th ed.), 71 *et seq.* Our conclusion, therefore, is that the assignment to Combs could not, upon common-law principles, be impeached simply because it had the effect to prevent the appellant, by means of the execution levy, from securing priority over all other creditors.

But it is contended that her right of preference over other creditors in the distribution of the proceeds of the property levied upon can be sustained under the provisions of the bankrupt law, and the adjudication of bankruptcy against Shuey. The argument is, that that adjudication having been made upon the ground, in part, that the assignment to Combs was made with the intent, on the part of Shuey, to hinder, delay, and defraud his creditors, such assignment is to be regarded as fraudulent and void from the moment of its execution, and, therefore, as interposing no obstacle whatever in the way of the levy subsequently made in her behalf. This argument, although plausible and ingenious, is not, in our judgment, sound, or at all consistent with the objects intended to be

accomplished by the bankrupt law. If that law had not been in force, the appellant would not have acquired priority over other creditors by the sheriff's levy, for the obvious reason that the right of property, in the goods seized under the execution, had previously passed, by a valid and unimpeachable deed, to Combs, and they were not, thereafter, subject to execution as the property of the debtor. We have often declared that the *pro rata* distribution of the property of the bankrupt was the main purpose of the bankrupt statute. *Buchanan* v. *Smith,* 16 Wall. 277. A serious defect in that statute would be developed if its provisions received such a construction as would enable the appellant to defeat that purpose by obtaining an advantage over other creditors. We are of opinion that no such construction is demanded, either by its letter or its spirit. Since by the sheriff's levy the appellant acquired no priority of right in or lien upon the goods, how could the subsequent proceedings in bankruptcy have the retroactive effect to give her a preference over the other creditors of Shuey? The argument in support of the opposite view ignores the fact that neither Combs nor the creditors who, under the assignment to him, acquired an equitable interest in the property were parties to those proceedings. Their rights, therefore, under his assignment, were not, and necessarily could not be, conclusively determined by those proceedings. Notwithstanding the adjudication, Combs, the assignee of Shuey, was at liberty to contest with the assignee in bankruptcy the question whether the assignment to Combs was a fraud on the Bankrupt Act, or was made with the intent to hinder, delay, or defraud creditors, or to prevent the property from coming to the assignee in bankruptcy, or from being distributed under that act. That no such issue was made between the assignee in bankruptcy and Combs, representing the creditors of Shuey, is due, doubtless, to the fact that the administration of the debtor's effects in the bankruptcy court would accomplish the same end designed by the assignment to Combs; namely, the distribution of the property for the equal benefit of all the creditors. But the absence of such an issue, and the failure of Combs to assert his rights against the appellee, cannot have the effect to increase the appellant's rights to any extent whatever. She cannot

complain that the creditors submit without contest to the distribution of the property through the assignee in bankruptcy, rather than through Combs, under the assignment to him. If she did not acquire any right by force of the levy, it is of no consequence to her, under the issues in this suit, that the assignee in bankruptcy rather than Combs has possession of the property in question. She cannot use the adjudication in bankruptcy to give vitality to an execution levy, which, when made, was ineffectual for any purpose of priority, and then employ the levy, thus vitalized, to defeat the primary object of the adjudication, which was to distribute the bankrupt's effects for the equal benefit of all the creditors. Whatever may be the respective claims of the assignee in bankruptcy and Combs, it is sufficient for the disposition of this case to say that the appellant acquired no priority of right by the execution levy. The adjudication in the bankruptcy court was for the purpose of bringing the bankrupt's effects into that court for distribution, and the appellant cannot, by force of that adjudication, secure a priority, which, without such adjudication, she would not have had. To hold otherwise would be to make the bankruptcy proceedings the instrument of defeating the wise and beneficent policy which the Bankrupt Act was intended to subserve. Even if it were conceded that the assignment to Combs was an act of bankruptcy, upon the ground that it was made with the intent to prevent the property from coming to the assignee in bankruptcy, and from being distributed under the Bankrupt Act, it was not invalid, except with reference to proceedings under the bankrupt statute, to be instituted by the bankrupt, or by some creditor, for the purpose of bringing the bankrupt's effects into the bankruptcy court. *Everett* v. *Stone*, 3 Story, 446; *Dodge* v. *Sheldon*, 6 Hill (N. Y.), 9; *Seaman* v. *Stoughton*, 3 Barb. (N. Y.) Ch. 348; 15 Nat. Bank. Reg. 228.

*Decree affirmed.*

MR. JUSTICE BRADLEY dissented.