FINCH *v.* WATSON INVESTMENT COMPANY.

Opinion delivered October 5, 1931.

318

*Knott & Spencer* and *Caraway, Baker & Gautney,* for appellants.

*Buzbee, Pugh & Harrison, N. F. Lamb* and *Frierson & Frierson,* for appellees.

BUTLER, J., (after stating the facts). ■ The duty of the assignees and receivers was to take charge of the property conveyed to them, and they were obligated to faithfully account for all of such property and to make such disposition of it or the proceeds therefrom as the court might direct. The obligation of the surety on the bond was only that its principal should so do. There is no breach of the bond alleged in the complaint, the only allegation relating to the assignees and their surety being that a bond was executed by them upon their appointment as receivers, and that the court ordered them to turn over all of the assets of Taylor, real and personal, to the Watson Investment Company, and that they acted in obedience to said order. The mere fact that the proceedings of Taylor by which he sought to settle with his creditors might have been void could not impose any personal liability on the assignees or their surety where they fully accounted for all assets coming into their hands and paid such over under the direction of the court. This was a complete compliance on their part with their duties, and relieved them from liability under the terms of the bond, and the demurrer as to them was properly sustained.

320

■ The main question, however, is: Were the deeds, first to the assignees and then to Watson Investment Company, by which the property of Taylor was conveyed, and the decree of the court made and entered February 28, 1930, void and should they be set aside because in violation of the National Bankruptcy Act?

"It is well settled by a multitude of incontestable authority that the passage of the National Bankruptcy Law by Congress renders it the supreme law of the land, binding alike upon State and Federal tribunals. All State insolvency laws in force at the time must yield to it, and can no longer operate upon persons or cases within the purview of the Federal statute. The latter does not, indeed, repeal or destroy the State laws on the same subject, but it supersedes them and suspends their operation for the time being." Black on Bankruptcy, 4th ed., § 14.

Were the proceedings in the case at bar under the insolvency laws of the State within the meaning of the Federal Bankruptcy Act as construed and applied in the case of *International Shoe Co.* v. *Pinkus,* 278 U. S. 261, 49 S. Ct. 108?

Chapter 93 of Crawford & Moses' Digest contains the State law on that subject, and it was a proceeding under that statute which was held void as in violation of the National Bankruptcy Act in *International Shoe Co.* v. *Pinkus, supra.* It is the contention of the appellants that this is a like proceeding. In this contention we think the appellants err. By the first section of chap. 93, *supra,* (§ 5885), in order to begin proceedings it is necessary for the insolvent debtor to file in the chancery court a complaint in which one or more creditors shall be made defendants, asking to be declared insolvent and for the appointment of a receiver to take charge of the property and to distribute the same among the creditors. The transcript in this case does not contain any such complaint.

By the 4th section of chap. 93 (§ 5888), it is made the duty of the receiver, under the order of the court or the

judge, to convert the assets coming into his hands in money and upon final hearing to distribute it among the creditors, not *pro rata,* but preferring first the salaries of employees earned within three months and all laborers' wages; and preferring second and directing payment *pro rata* among those creditors who should file in court a stipulation for the use of the debtor to the effect that, in consideration of the preference to be thus obtained, the debtor should be acquitted of all further liability in person to such creditors. After making the above payments, the remainder of the funds, if any, are to be distributed equally among the other creditors. In none of the exhibits filed by the plaintiffs with their complaints is there any order for distribution as provided by said section, nor is there any such in the order of the court of February 28, 1930, which is sought to be set aside. It is apparent, therefore, that the procedure was not under chap. 93, as claimed by the appellants.

In the bond executed by the assignees the recital is made, ''Whereas, said J. P. Taylor has, by his deed of assignment dated November 1, 1929, conveyed all of his property to the above bound Aline Murray and F. N. Burke for the benefit of all of his creditors, under and by virtue of the laws of this State relating to assignments for the benefit of creditors.'' The deed of assignment was not made an exhibit with the complaint, but it is apparent from the bond above referred to, which was made an exhibit, that such deed was the first step in the proceeding. Where any person shall desire to make an assignment of his property for the benefit of his creditors, by § 486, chap. 9, Crawford & Moses' Dig., it is made the duty of the assignee named in the deed of assignment to take immediate possession of the property and within ten days thereafter to file with the clerk of the court having equity jurisdiction an inventory of the property, together with a bond with good security, which bond shall be conditioned that the assignee shall faithfully execute the trust confided to him under the provisions of said deed and the order of the chancery court or judge thereof in vacation.

There was no inventory exhibited with the complaint, so that we are unable to know whether or not such inventory was made and filed, but, the deed of assignment having been made and the bond filed, it would appear as if Taylor was attempting to proceed under chap. 9, of Crawford & Moses' Dig., entitled, "Assignment for benefit of creditors," as contended by the appellees, and from the recitals in the order made this also seems to have been the opinion of the chancellor. As we have seen, § 486, of chap. 9, the first section of that chapter presupposes the making of a deed of assignment, makes provision after the deed has been made for the filing of inventory and the giving of bond. By § 487, the assignee is made liable upon his bond for any loss that may occur by reason of his negligence or mismanagement after the property comes into his possession, or for failure to obey the orders of the chancery court in relation thereto, or to carry out the provisions of the assignment. Section 488 provides that the assignment may be contested by any creditor for fraud. Section 489 provides for limitation as to contest of the assignment. Section 490 provides for the sale or disposition of the property upon a showing made by any one interested that it is necessary, and provision is further made for the time, terms and place of sale and the manner thereof to be determined by the court. Other sections provide for the employment of counsel, for the filing of accounts by the assignee, and for the approval and examination of the accounts by the court.

It is contended by the appellants that as all the requirements of chap. 9, *supra,* were not complied with, the inference arises that the proceedings were not had under and by virtue of said chapter; and further, that, if they were so had, such chapter was repealed by the enactment of the insolvency law, now chap. 93 of the Digest, and appellants suggest that "a Philadelphia lawyer should be pardoned if, after reading the record presented to the chancery court in the so-called assignment proceeding, he had erred in determining whether assignees were at-

tempting to proceed under chap. 9 or chap. 93." We confess that the record as presented is somewhat confusing, but from the recitals in the bond and the order of the court of February 28, 1930, it is clear that the proceedings were not such as provided by the insolvency act, but more nearly approach the provisions of chap. 9, *supra,* as contended by the appellees. The right to convey one's property in any manner one might see fit, including the right to make voluntary assignments for the equal benefit of creditors, is one inherent in the ownership of property and which existed prior to the enactment of our statute, which merely regulated the previously existing right and surrounded its exercise with safeguards for the benefit of creditors. *Boese* v. *King,* 108 U. S. 379, 2 S. Ct. 765; In re *Ternowski,* 191 Wis. 279, 210 S. W. 836, 49 L. R. A. 686; *Stellwagen* v. *Clum,* 245 U. S. 605, 38 S. Ct. 215.

In this case it seems that there was first a deed of assignment for the benefit of creditors made by Taylor to the named assignees who proceeded to discharge that trust under the provisions of chap. 9, *supra;* but soon after the deed of assignment was executed and the bond filed the creditors of Taylor and Watson made a proposition which was acceptable to the debtor. All of his known debts were listed, and these debts Watson, for himself and his associates, agreed to satisfy in consideration of the transfer by Taylor to them of certain lands named and personal property in the hands of the assignees, except one small tract of land and certain insurance policies which Taylor was allowed to retain. Taylor accepted this proposition, and his acceptance put an end to the proceedings. The assignees and receivers were ordered to deliver to Watson Investment Company, a corporation formed for the purpose of administering the estate of Taylor and the estate of other insolvents, and were discharged from further duty and relieved from liability on account of their trust, and Taylor conveyed his property by proper instruments to the Watson Investment Company for the considerations aforesaid. The

effect of all this was the same as if, without ever having made any assignment for the benefit of creditors, Taylor should have made the trade with Watson by which Watson agreed to pay Taylor's debts, and Taylor in consideration therefor agreed to transfer his property to Watson, which trade was concluded by ascertaining from all available sources a list of the creditors and the amounts owing to each, the assumption of these debts by Watson, and the transfer of property by Taylor to Watson. This, we think, is the effect of the proceedings as finally consummated. Whatever the proceedings in the court, they were abandoned because the debtors and creditors devised a plan mutually satisfactory and more suited to their desires than the disposition of the matter through the agency of the court and of the assignees, and this proceeding can only be attacked for fraud which would hinder, delay or prevent the creditors from collecting their debts.

Every transaction for conveyance of property may be vitiated for fraud, since good faith is the basis of all contracts. *Herman* v. *McSpaulding,* 174 Ark. 184, 295 S. W. 353. But a general allegation to that effect is not sufficient. The complaint must allege facts upon which the conclusion is based. *Baxter County Bank* v. *Copeland,* 114 Ark. 316, 169 S. W. 1180. It is true the insolvency of the debtor is alleged, but this of itself is not sufficient to allege or establish fraud (*Melton* v. *State,* 177 Ark. 1194, 10 S. W. [2d] 500), although it may, when coupled with other circumstances, create a *prima facie* presumption of fraud. As this is a proceeding in equity, the general allegation in the body of the complaint, although of itself not sufficient, may be supplied by the exhibits, as these may be looked to to supply the specific facts upon which the general allegation of fraud is predicated, and, when they are the foundation of the action, will control the averments in the complaint, and are presumed to have been considered by the chancellor. *Cox* v. *Smith,* 99 Ark. 218, 138 S. W. 978; *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671. The most that is alleged is

that Taylor was insolvent at the time of the transfer, and "said deed of conveyance for said real estate and said contract for the delivery of personal property was made with the purpose and intent to hinder, delay and defraud the creditors of said John P. Taylor and was and is void." Here, it will be seen, is only a general allegation, not of facts, but of a legal conclusion, and an examination of the exhibits to which we may look fails to supply any facts upon which the general allegation may be based.

There is, therefore, no badge of fraud connected with the transaction warranting the interference of a court of equity unless the assignment itself might be so considered. While it might have been an act of bankruptcy, had the debtor belonged to any class coming within the provisions of the bankruptcy act, it by no means follows that it evidenced any bad faith, but rather that it was an act which might well be said to have been prompted by a sense of duty on the part of the debtor and a desire to treat all his creditors fairly and impartially. This is the effect of the holding in *Mayer* v. *Helman*, 91 U. S. 496. In *Reed* v. *McIntyre*, 98 U. S. 507, in effect it is held that where it appears that a debtor's assignment is made in good faith, the assignment is not to be impeached as fraudulent simply because it had the effect to prevent one creditor by means of execution levied from securing priority. The court, in that case, quoted with approval from the case of *Pickstock* v. *Lyster*, 3 Maule & Selwyn 371, where, speaking of the assignment, it was said that it was "to be referred to as an act of duty rather than of fraud, when no purpose of fraud is proved. The act arises out of a discharge of the moral duties attached to his character of debtor to make the fund available for the whole body of creditors. * * * It seems to me that this confession, so far from being fraudulent, was the most honest act the party could do. He felt that he had not sufficient to satisfy all of his debts and he proposed to distribute his property in liquidation of them."

In the case of *International Shoe Co.* v. *Pinkus*, 278 U. S. 261, 49 S. Ct. 108, the assignment was held to have been made for the purpose of hindering and delaying the creditor in the collection of his debt, but the facts there are quite different from those of the case at bar. In that case a creditor had proceeded to reduce his account against the debtor to judgment, and immediately thereupon the debtor filed a proceeding under the State insolvency statute (chap. 93, of the Digest), which necessarily had the effect found by the court; but here the debtor, a farmer, before any proceedings were begun by the creditors, realizing his involved condition made a general assignment for all of them, which, as was said in *Pickstock* v. *Lyster, supra,* "was the most honest act he could do."

■ The act of 1897, chap. 93, *supra,* is an insolvency law, and is so recognized by a number of our decisions, (*Hickman* v. *Parlin-Orendorff Co.*, 88 Ark. 519, 115 S. W. 371; *Baxter County Bank* v. *Copeland, supra; Morgan* v. *State,* 154 Ark. 273, 242 S. W. 384), and, so far as it is in conflict with the National Bankruptcy Act, was superseded thereby, *Baxter County Bank* v. *Copeland, supra.* And as it classified creditors, preferred those of a certain class, and gave preference to all others fully discharging the bankrupt in consideration of a *pro rata* distribution among them, operated within the field occupied by the bankruptcy act. *International Shoe Co.* v. *Pinkus, supra.*

But, as we have seen, it appears that the proceedings in the instant case were begun by an assignment to a trustee for the benefit of creditors and was sought to be conducted under chap. 9, of the Digest, *supra,* and had the debtor's estate been fully administered under the provisions of that chapter, we are of the opinion that those provisions, being essentially different from those of the insolvency act of 1897, were not repealed by the passage of that act as contended by the appellant. Nor is it an insolvency act within the meaning of *International Shoe Co.* v. *Pinkus, supra.* This act provides for no classification of creditors nor preference to one class of

such over another; nor does it provide for the discharge of the debtor from any claim or class of claims. It simply regulates the exercise of a common-law right, to-wit, the right of assignment for the equal benefit of all creditors, and, by certain salutary provisions, safeguards the administration by the trustee for the interest of the creditors. The manifest purpose of the assignment and the statute regulating such is to provide for a fair and equal distribution of the assets of the debtor among his creditors and the case of *International Shoe Co.* v. *Pinkus, supra,* and such other cases, holding a State insolvency act superseded by the National Bankruptcy Act, have no application.

In *Stellwagen* v. *Clum,* 245 U. S. 605, quoting from page 616, 38 S. Ct. 218, it is said: "In the argument of counsel of the defendant in error, the position is taken that the bankrupt act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the State. The answer is, that the statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments; it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties; it requires them to file statements showing what they have done with the property; and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment; it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions for enforcing a trust are substantially such as a court of chancery would apply in the absence of any statutory provision." To the same effect are the cases of *Mayer* v. *Helman, supra; Boese* v. *King,* 108 U. S. 379, 2 S. Ct. 765; *Pogue*

v. *Rowe,* 236 Ill. 157, 86 N. E. 207; In re *Gutwillig,* 92 Fed. 337; *Davis* v. *Bohle,* 92 Fed. 325; In re *Farrell,* 176 Fed. 63; *Green* v. *Rice,* 32 Fed. 504, 186 Pac. 249. Chapter 9 is similar in all respects to the Ohio statute referred to and construed in *Stellwagen* v. *Clum, supra.*

■ The statement is made by the appellants that the debtor Taylor was a farmer and engaged principally in farming, and upon that statement appellee insists that, even though Taylor had been proceeding under the State insolvent law, chap. 93, *supra,* as to him and those of his class, the act is not superseded by the National Bankruptcy Law, and that the chancery court might have proceeded to administer his estate under the provisions of the insolvency act, and its orders would have been valid. We pass this point as a decision of it is unnecessary in the instant case, for it follows from what we have said that the appellant must fail in this case; first, because the proceeding as finally consummated was a mere transfer by the debtor to another of his property with the express undertaking on the part of the grantee to pay the debts of the grantor, and that this transfer was not made to hinder, delay or defraud the appellant, and was not a proceeding under any statute, but the exercise of a right given him by common law. Second, that the order of the chancery court complained of did not attempt to prefer any creditor over the appellant, and in fact did no more than give its approval to the bargain made between Taylor and Watson and to discharge the assignee from any further duty after surrendering to Watson what property they might have held under the deed of assignment and to relieve them and their surety of liability on their bond. Third, that the proceedings, *viz.,* the deed of assignment, the filing of the bond in the chancery court, and the order of the court made, was not a proceeding under the State insolvency act, and was not in conflict with or superseded by the National Bankruptcy Act.

The decree of the court below must therefore be, and it is, affirmed.