## Case No. 11,219.

### PLATT v. PRESTON et al.

[19 N. B. R. 241.] [1]

District Court, S. D. New York. Feb. 6, 1879.

BANKRUPTCY—ASSIGNMENT WITHOUT PREFERENCES—PREFERENCE—MORTGAGE—INJUNCTION—RECEIVER—MULTIFARIOUSNESS OF BILL.

1. A general assignment for the benefit of creditors without preferences is necessarily a fraud under the bankrupt law [of 1867 (14 Stat. 517)].

[Cited in Wehl v. Wald, 3 Fed. 93.]

2. The bankrupt, who was a brewer, in March, 1878, gave to one P. a chattel mortgage for thirty thousand dollars on his machinery and other personal property, to secure payment of an amount then due, and also for future consignments of malt. This mortgage was not filed, and on the 14th of August was assigned by P. to one W., who gave therefor his promissory notes for thirty thousand dollars. W. had not sufficient means to pay said notes, unless the mortgaged property proved to be nearly worth the amount he gave for it. At the time of this assignment the bankrupt was insolvent. W. filed the mortgage on the 15th of August, foreclosed it, and, at the sale on the 20th, purchased the property for thirteen thousand dollars. On the same day the bankrupt leased the brewery for an alleged adequate rent to W., who took possession, and carried on the business in the name of the bankrupt's son. On the same day also the bankrupt made a general assignment to one D., his bookkeeper, and a person of no pecuniary means, who never gave the bond required by law. On the 31st of August a petition was filed by creditors, on which the bankrupt was adjudicated. On a motion for an injunction and a receiver, made in a suit brought by the assignee to recover the property, held, that the motion should be granted; that the bill was not multifarious, the acts of all the defendants being charged to have been done with a common purpose, and the object of the bill being single, viz. to recover the estate and clear it of the apparent encumbrances created by the several instruments sought to be set aside.

[Cited in Van Kleeck v. Miller, Case No. 16,-860.]

3. The assignment and lease were clearly indicative of actual fraud on the creditors.

4. While the mortgage was not a fraudulent preference under the bankrupt law, by reason of its subsequent filing, or of its being kept secret to induce credit, yet, under the laws of New York, it was void as to creditors, and their rights as to the property covered by it passed to the assignee, and can be enforced by him.

[Cited in Re Oliver, Case No. 10,492; Wait v. Bull's Head Bank, Id. 17,043; Wehl v. Wald, 3 Fed. 93; Re Kraft, 4 Fed. 524.]

[This was a bill in equity brought by Platt assignee in bankruptcy of Newman against William J. Preston, Montz Weinman and Anthony J. Diekelman to set aside as fraudulent against the creditors of the bankrupt, a chattel mortgage given to the defendant Preston, a lease to the defendant Weinfeld, and a general assignment made to the defendant Diekelman, all of which were alleged to have been executed in pursuance of a common fraudulent purpose, and as parts of a single scheme to defraud, hinder, and delay creditors.]

A. Blumensteil, for complainant.

B. F. Tracy, for defendant Preston.

Van Alstine & Ross, for defendant Diekelman.

F. W. Angel, for defendant Weinfeld.

CHOATE, District Judge. This is a motion for an injunction and receiver pendente lite. The suit is in equity by the assignee in bankruptcy of one Newman, to recover the property of the bankrupt, alleged to have been transferred in fraud of creditors. The bankrupt was a brewer, owning and carrying on a brewery. The defendant Preston is a maltster, and in July, 1877, upon the recommendation of the defendant Weinfeld, Preston began to supply the bankrupt, Newman,

---

with malt, upon a credit of four months, and he continued so to trade with him till March, 1878. In March, 1878, the bankrupt desired a larger credit, running up to thirty thousand dollars or more, and he gave Preston a chattel mortgage on the machinery and other personal property connected with his brewery, to secure the amount already due, and such further amounts as should become due in that business, and, as a part of the same agreement, Preston was to consign to the bankrupt malt to be manufactured into beer by the bankrupt, at his own cost and expense, for Preston's account, to be sold by the bankrupt, and the proceeds paid to Preston to the extent of an indebtedness which might exist for the malt so consigned. The chattel mortgage secured the performance of this agreement as well as the moneys already due for malt. The brewery and all the property mortgaged remained in the possession of the bankrupt, and the chattel mortgage was not filed as required by the statute of New York. By the 1st of August, the indebtedness of the bankrupt to Preston had increased to about thirty-two thousand dollars. The bankrupt had become slow in meeting the payments due under the agreement, and on the 14th of August Preston assigned his mortgage and agreement, and the debt secured by it to the defendant Weinfeld, taking, in consideration therefor, Weinfeld's promissory notes for thirty thousand dollars, without other security. Weinfeld was a merchandise broker, having some means, but not enough to meet these notes, which were made payable within a few months, unless the mortgaged property proved to be very nearly worth what he gave for it. Weinfeld swears that as soon as he bought the mortgage, he went and examined the bankrupt's premises, and that, in consequence of finding in the brewery only three thousand four hundred barrels of beer, whereas the bankrupt had shortly before represented to him that there were six thousand barrels, he determined to foreclose immediately. Accordingly, he filed the mortgage on the 15th of August, and went through the process of foreclosing it according to the laws of New York, advertising the sale in one obscure paper called the "Daily News." The sale was on August 20th, and Weinfeld became the purchaser for about thirteen thousand dollars, and immediately after took possession, and since that time has carried on the business under the name of the bankrupt's son, paying over to Preston the proceeds of the business in payment of his notes. On the same day, August 20th, the bankrupt made a voluntary assignment of all his property, for the benefit of his creditors, to the defendant Diekelman, his bookkeeper, a person of no pecuniary responsibility, and who has never given bonds or otherwise complied with the statutes of New York in respect to such assignments. The assignment included the books of the bankrupt. On or about the same day, the 20th of August, the bankrupt executed a lease of the brewery to Weinfeld for what is alleged to be an inadequate rent. From the 14th of August Newman was insolvent, and a petition was filed by his creditors, August 31st, on which he has been adjudicated a bankrupt. The bill charges a combination and fraudulent purpose on the part of Preston, Weinfeld, and Diekelman, by means of the secret mortgage, the general assignment and the lease, to defraud the creditors of the bankrupt, and to defeat the operation of the bankrupt law, and to secure a preference to Preston, and it seeks to set aside the mortgage, the assignment, and the lease.

It is objected by the defendants that the bill is multifarious. This is clearly not so. Although the several defendants are charged with acts of fraud affecting different parts of the estate of the bankrupt, yet their acts are charged to have been done with a common purpose, and the object of the bill is simply to recover the estate, and clear it of the apparent encumbrances and titles created upon it by the several instruments sought to be avoided. The bill is sustained by the well-considered cases of Boyd v. Hoyt, 5 Paige, 65, and Fellows v. Fellows, 4 Cow. 682.

As to the general assignment, it is insisted that it is not per se a fraud upon the bankrupt law, but void if actual intent to defraud or to defeat the law shall be shown. This may still be regarded as being an open question in the supreme court of the United States. Mayer v. Hellman, 91 U. S. 496. But the great weight of authority at present is, that a general assignment for the benefit of creditors without preferences is necessarily a fraud under the bankrupt law, defeating the operation of the law, because it provides for the administration of the estate in a different way from that provided by the bankrupt law, and by an assignee selected by the bankrupt himself. Globe Ins. Co. v. Cleveland Ins. Co. [Case No. 5,486]; Macdonald v. Moore [Id. 8,763]; In re Beisenthal [Id. 1,236]. The complainant, therefore, is entitled to a receiver of the property that passed by the assignment. The circumstances attending the making of the general assignment, and the contemporary lease, were too clearly indicative of actual fraud upon creditors to be overborne by the denials of Weinfeld and Diekelman, and therefore the motion is granted as to the general assignment and the lease.

The real question in the case is whether, on the facts shown, the complainant is entitled to an injunction and receiver in respect to the property covered by the chattel mortgage. It is claimed on the part of the complainant, that he is entitled to the relief asked on three grounds: first, because the chattel mortgage is to be considered as having been given at the date of its filing, and that the giving of it then would have been, and, therefore, the filing of it was, a fraudulent preference, which the assignee in bankruptcy can set aside; and secondly, because the evidence

warrants the conclusion that the mortgage was kept secret by Preston, with a fraudulent intent toward the creditors of Newman, and to induce a false credit whereby he might continue along in business, and so pay Preston's debt; and thirdly, because, as to creditors, the statute of New York makes an unfiled chattel mortgage, where the mortgagor retains possession, void; and that creditors whose debts exist prior to the filing or taking possession, have such an interest in or claim to the property mortgaged, that the assignee in bankruptcy, though his title accrues subsequently to the filing or the taking possession, may recover the property as property transferred in fraud of creditors.

As to the first and second of these claims they are, I think, conclusively disposed of by the decision of the supreme court of the United States in the recent case of Sawyer v. Turpin, 91 U. S. 114. In that case it was held that a chattel mortgage, within the period when it might have been held an unlawful preference, and given and received with knowledge of the debtor's insolvency, was not a preference within the prohibition of the bankrupt law, although it was given in exchange for an earlier mortgage which was never recorded, and which, by the law of the state, was "not valid against any person other than the parties thereto." It was held that each earlier unrecorded mortgage being valid as between the parties was a sufficient consideration for the new mortgage, and that the transaction was an exchange for value, and not a preference for a pre-existing debt, and that it was not in conflict with provisions of the bankrupt law which avoids preferences, "the purpose of which is to secure a ratable distribution of the property of a bankrupt, owned by him at the time of his becoming bankrupt, and undiminished by any fraudulent preferences given within four months prior thereto." And it was further said by the court, that it would make no difference in the result that the mortgage had been purposely kept secret in order to induce false credit to the bankrupt, because "the bankrupt act was not intended to prevent false credits." Its purpose is ratable distribution. The neglect of Preston therefore, or even his intended failure to file his chattel mortgage down to a time when he may have known of Newman's insolvency, cannot be held to make the filing of it the giving of a new security, or to make it void in his hands as against the assignee in bankruptcy, by reason of such failure to file it being a fraud upon creditors, which it was within the purview and meaning of the bankrupt law to recognize as a ground of recovery of the property as fraudulently transferred, or as a preference. The rule thus declared in Sawyer v. Turpin [supra] was followed by the district court for the Eastern district of Michigan, in the case of In re Barman [Case No. 999], where it was held that the failure to file a chattel mortgage until within four months

before the bankruptcy, and until after knowledge of the insolvency of the mortgagor did not make it a fraudulent preference.

It remains to consider whether, independently of the provisions of the bankrupt law avoiding fraudulent preferences, any right or interest vested in the assignee, in the property covered by this mortgage, which he can enforce against the mortgagee for the benefit of the creditors of the mortgagor. It is to be observed that the case of Sawyer v. Turpin [supra] arose under the law of Massachusetts, whose statute provides that "unless a mortgage is so recorded, or the property mortgaged is delivered to, and retained by the mortgagor, it shall not be valid against any person other than the parties thereto." And in the construction given to this statute by the highest court in that state, it had been held that notwithstanding the declared invalidity of the mortgage as against creditors, yet that the mortgagee could file it, or could take possession at any time, and thereupon his title became perfect as against any creditor of the mortgagor, unless such creditor had acquired a specific lien or title to the property by attachment or execution prior to the filing or the taking of possession, and that under the state insolvent law the assignee could not recover the property for the benefit of the creditors, unless his title accrued before the filing, or the taking possession. Mitchell v. Black, 6 Gray, 100.

The question in the present case is whether, under the statute of New York, creditors have a different, and a larger interest, one that they can enforce, or that can be enforced by their trustee, although they acquire no specific lien prior to the filing, or the taking possession by the mortgagor. The statute of New York declares: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels, hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged shall be absolutely void as against creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed, etc." In the construction of this statute it has been expressly held by the court of appeals, that although a creditor is not in a position to raise the question of the validity of the chattel mortgage with the mortgagee until he has received judgment and takes out execution on his debt, yet, that having done so, his right relates back to the time of the contracting of the debt, and if at that time, or while the debt is in existence, the neglect to file the mortgage exists, he has a preference over the mortgagee in having the property applied to payment of his debt, even though the mortgage was filed before he obtained judgment; that this interest or right of the creditor is one that attaches to the debt, and accompanies it when transferred to another. And

further, it was held that such right attaches to all the debts of the debtor existing during such default, and not merely to those contracted during the default, and the lien of the execution levied on the mortgaged property, though issued on a judgment recovered after the filing of the mortgage, was held superior to that of the mortgagee. Thompson v. Van Vechten, 27 N. Y. 568.

"It is argued," says the court, "that this embraces only creditors who have obtained judgments and executions during the time when the omission to file existed. If this were so, the act would not in many cases accomplish any beneficial purpose. One proposing to part with money or property to another under a contract to be repaid at a future time, could obtain no information for his guidance by a search at the proper office. But it was the apparent, and I think the real office of the act to prevent the setting up of secret mortgages against persons who might deal with the mortgagor on the faith that his property was not thus encumbered." And from the peculiar language of the act, the court goes on to reason and decide that all the creditors of the mortgagor who were such during the existence of the default were intended to be included within its benefits. The interest then which a creditor of the mortgagor has in property transferred by an unfiled chattel mortgage in the state of New York, is quite different from that which, under the laws of Massachusetts, such a creditor has in such property so transferred in that state, and which the court had to deal with in Sawyer v. Turpin (ut supra). In that case the interest was a mere possibility of making the property subject to a lien to be perfected, and to attach to the property before the recording or taking possession—a possibility of an interest which was extinguished by a filing or taking possession before such lien should attach or become perfected. In New York this creditor's interest is not so extinguished, but inheres in the debt, and may be afterwards perfected and made to attach by judgment and execution subsequently obtained and issued. The case of Sawyer v. Turpin, therefore, while it is conclusive that the bankrupt law does not of its own force make such subsequent filing a fraudulent preference, and does not by its own force avoid such a secret mortgage in favor of the creditors, on the ground that it created or induced a false credit, yet it is not conclusive that this interest of creditors in New York in the property covered by the mortgage may not pass to and be enforced by the assignee in bankruptcy for the benefit of creditors. This depends on the further question whether the assignment in bankruptcy is operative to vest this interest or power to sue in the assignee. That the property so held under a secret mortgage is in New York held to be, and aptly described as property transferred in fraud of creditors, is shown as well by the reasons given in the case of Thompson v. Van Vechten for the decision above referred to, as by the terms of the statute of New York avoiding conveyances as to creditors for failure to file or record the same. By the Revised Statutes (section 5046) it is provided that all property conveyed by the bankrupt in fraud of his creditors shall be at once vested in the assignee by force of the assignment. I cannot doubt that this includes property in which, by the local law, the creditors have, at the time of the bankruptcy, an existing interest as creditors of the bankrupt, or a right to have it applied to their debts as property declared by the laws of the state which govern their rights in it to have been conveyed in fraud of them, although the fraud be not one which is recognized and declared to be such by those provisions of the bankrupt law which invalidate conveyances as fraudulent against creditors.

The evident design of the statute is to secure the distribution among the creditors of all the property to which they are entitled as creditors of the bankrupt, and it should have a fair and beneficial construction to effect this purpose. I see no reason to believe that the bankrupt law was intended to take away from creditors any substantial right or interest in their debtor's property, which by the local law they have. Yet to hold that such an interest does not pass to an assignee in bankruptcy, is virtually to take such right or interest from the creditors and give it to a mortgagor, who, by the local law, is not entitled to it. If the bankrupt should be discharged, the debts being gone, of course all benefit to the creditors from their interest in this property will be gone. If the discharge shall not be granted, then possibly the rights of the creditors may revive, and they may compete with each other in a race of diligence to recover this property and so obtain unequal shares in the distribution of the bankrupt's estate, in obvious violation of the spirit and purpose of the bankrupt law. It is, however, objected that this view is erroneous, because no creditor except after judgment can proceed to collect his debt out of the property so transferred, and that the assignee in bankruptcy does not stand in the place of a judgment creditor; that by the bankruptcy, which prevents judgments, the rights of creditors are virtually extinguished, and the case of In re Collins [Case No. 3,007], is cited in support of this position. In that case it was indeed decided that no interest would pass to the assignee for the reason that the creditors' interest has not become a specific lien for want of a judgment, but the doctrine of Thompson v. Van Vechten, that there is an inchoate but existing right or interest of the creditors in the property, is recognized as the law of New York. The court, however, seems not to have been referred to another statute of New York, passed in 1858, which provides that "any executor, administrator, assignee, or other trus-

tee of an estate, or the property of an individual, may, for the benefit of creditors or others interested in the estate or property so held in trust, disaffirm and treat as void all transfers in fraud of the rights of any creditor or others interested, and maintain all necessary actions for that purpose." This act cannot be overruled in considering what is the precise nature of the interest of creditors in property so transferred, and what are the requisites made essential by the local law for the enforcement of the rights of creditors therein. In a very recent case the court of appeals have given a construction to this statute, and have held that this statute was designed for the benefit of all creditors having the right to payment out of their debtor's property so transferred; that its benefits are not limited to judgment creditors whose lien is specific and complete; that it obviates the necessity of judgments on the debts, and places the assignee or trustee in the place of all the creditors having such rights, and enables him to recover the property for their benefit; and that an assignee in bankruptcy is within its terms and entitled, under its provisions, to sue in the state court; and the court very wisely remarks: "The policy of the bankrupt law is to secure an equal distribution of all the property of the bankrupt among his creditors, and this object would be defeated if a fraudulent assignor could set the bankrupt assignee at defiance and a fraudulent conveyance not be contested. Creditors could not well do it after a decree in bankruptcy. They would be practically remediless. The bankrupt court would be a place of refuge for every debtor who had fraudulently disposed of his property, and the bankrupt act a perfect shield for fraud. The assignee represents the creditor's rights without the technical obstructions to the enforcement of those rights by a creditor at large." Southard v. Pinckney, 5 Abb. N. C. 184.

It cannot be said, therefore, since the statute of 1838, and especially since its interpretation in the case last cited, however it may have been before, and as the law of New York was presented to the court in the case of In re Collins [supra], that the obtaining of a judgment is an essential ingredient in the interest of creditors in property so transferred, without which that interest becomes by the bankruptcy virtually extinct. The federal courts follow the rulings of the highest state court as to the interpretation of state statutes, and this decision is therefore conclusive as to the nature of this interest of creditors in property declared by the law of the state to be conveyed in fraud of creditors. And thus the technical difficulty, found by the court in the case of In re Collins to exist in the local law, has been effectually removed.

The views above expressed, as to the power of the assignee to sue, as the representa-

tive of the creditors to enforce their rights against property in which, by the local law, they have still an interest at the time of the bankruptcy, without the formalities of judgment or other proceedings by which creditors may obtain a perfect and specific lien which is prevented by the bankruptcy, are sustained by the following decisions among others: Barker v. Barker's Assignee [Case No. 986]; In re Leland [Id. 8,234]; In re Gurney [Id. 5,873]. The cases of Sawyer v. Turpin (ut supra) and Miller v. Jones [Case No. 9,576], are clearly distinguishable on the ground that it was shown or assumed that by the local law the interest of the creditors had become extinguished prior to the bankruptcy. They do not militate against the proposition here advanced that if that interest survives to the creditors at the time of the bankruptcy the assignee is vested with a title or a right to sue, which enables him to enforce their rights as their representative. The complainant may therefore, as representing the creditors of Newman, attack the chattel mortgage, and he is entitled to an injunction and receiver in respect to the property covered by it.

It has not been necessary to discuss at length the evidence of actual intent to defraud creditors in this case. The proofs would not justify a finding that the chattel mortgage was not, in its inception, made in good faith, otherwise than as it may have been intended to keep it secret as regards creditors, or that Newman was then insolvent. And if Preston had, as is claimed, a right to file his mortgage at any time, and thereby totally extinguish the rights of creditors, I do not perceive that his knowledge of Newman's insolvency at the time of his filing it could affect his rights, or that he might not, with knowledge of such insolvency, assign his right in the mortgage to a person having notice of such insolvency. There is, however, strong reason to conclude, notwithstanding the denials of the parties, that Preston, Weinfeld and Diekelman were, from the time of the sale of the mortgage, on the 14th of August, acting in concert with each other, and with the bankrupt, to obtain payment of Preston's debt and to prevent the property from being distributed among the creditors under the bankrupt law. The sale of the mortgage by Preston to Weinfeld was made under circumstances which show that there was some purpose for it beyond what appears on the face of the transaction or is admitted by the parties. It is not our experience of human nature that men give up a good security for so large an amount for the mere promises of a third party having no apparent means to perform such promises, nor that men suffer so great and so rapid ruin as seems to have overtaken Newman between the 14th and the 20th of August, without resistance or protest, unless they are consenting parties to it. The whole se-

ries of transactions was apparently for the purpose of making a better and more defensible title against the creditors of Newman.

Motion granted. Order to be settled upon notice.

[NOTE. Diekelman subsequently died and the cause was revived against his administrator. Upon the final hearing the bill was dismissed as to Preston and Weinfeld. The charge of fraud was not proved as against them. As to Diekelman's administrator, no order was entered, the case not being ready for hearing. 3 Fed. 394. From this decree the plaintiff took an appeal to the circuit court. It was there heard upon motion to dismiss. 8 Fed. 182.]