[No. 342.   On rehearing, July 25, 1891.]

## TORLINA, PLAINTIFF IN ERROR, v. TRORLICHT & HOHNSTRATOR, DEFENDANTS IN ERROR.

ATTACHMENT—FINDING, REVIEW ON APPEAL.—On a review of the findings of a court, the same rules apply as to the sufficiency of the evidence to support such findings as prevail on the review of the verdict of a jury.

ID.—INSTRUCTIONS.—Where the court below has fully and fairly declared the law applicable to the whole case, the appellate court will not reverse the cause for any alleged error in its refusing other instructions asked, but not given, on the trial.

ID.—DEED OF ASSIGNMENT—DELAY—FRAUD.—Held, on petition for rehearing: The court is of the same opinion heretofore rendered in this cause, at the January term, 1889, 5 N. M. 148, to wit: That a deed of assignment, made by a debtor in good faith and with the honest intent to apply all his property to the just payment of his debts, but requiring some slight incidental delay necessary to the conversion of the same, by proper means, into cash, for that purpose, is not, by reason of such delay, fraudulent in law.

PETITION for rehearing.   Petition overruled.

The opinion states the case on rehearing.

NEILL B. FIELD for plaintiff in error.

W. B. CHILDERS for defendants in error.

LEE, J.—The plaintiff in error on the second day of March, 1889, filed in this court his petition for rehearing, supported by forcible and able argument. The questions discussed are those considered by the court in the opinion heretofore rendered.   The defendants in error in their brief originally filed presented two points for consideration.   The first was, where a question of fact had been submitted to the court and passed upon without a jury, the appellate court could not review the rulings of the court below thereon.   The court held adversely to the proposition, as it was urged

by the defendants, and fully considered all the ques-
tions of error presented by the plaintiff. This question
has since been before this court, and it was held that,
under the statutes of the territory as they then existed,
authorizing the waiving of a jury and trial by the
court, the general verdict of the court might be
reviewed, the same as a general verdict of a jury.
Therefore nothing would be considered in the case
except such rulings of the court, during the progress
of the trial, as have been duly excepted to and brought
before the appellate court by a bill of exceptions.
Lynch v. Grayson. But as the judgment of the court
below, as well as the opinion of this court sustaining
the same, in effect is in harmony with the views as
expressed in the case referred to, we will not further
consider the point than as it may have the effect to
limit our consideration to the exact questions decided
by the court below, and which has been properly

FINDING: review brought up for our determination. As
on appeal. before held, "the weight of evidence and
the inferences of fact must be drawn by the court
below, as it was the judge of that court, and not the
supreme court, that was substituted by agreement of
the parties in the stead of the jury." Insurance Co. v.
Folsom, 18 Wall. 237.

The second point made in the brief of defendants
in error is thus stated by them: "But, even if the
court can review the refusal to give the instruction
asked by plaintiff, such refusal was not error. The
court fully and fairly declared the law in the instruc-
tions given or adopted. Refusal to give instructions
in the abstract is no ground of reversal, where they
could not have been applicable to any evidence, and
proper instructions, appropriate to the case, were given
so that the party preferring those refused can not have
been injured by the refusal. If the law arising from
the evidence is fairly charged, or, as in this case, fully

recognized, by the court's refusal to give other instruc-
tions to the same effect is not error." It
is too well settled to need citation of
authorities that, if the court below fully and fairly
declares the law applicable to the whole case and the
several parts thereof, the court of last resort will not
reverse the cause for any alleged error in refusing other
instructions asked on the trial, but not given. In this
case the instructions given, or rather declared and held
by the court, do fully declare the law as applicable to
the issue and evidence. Two questions reasonably
arose in the trial court upon the evidence: First, were
the defendants about fraudulently to dispose of their
property at the time the writ of attachment issued, so
as to defraud plaintiff's creditors? Secondly, were
they about to dispose of their property subject to exe-
cution, so as to hinder and delay their creditors, in
such a manner as that such hindering and delaying
would amount to fraud in law, without reference to the
actual intent present in the minds of the defendants at
the time of the transaction? The law, as held by the
court below, is in favor of the plaintiff on the first
point. As to the second one, the trial court, in the
third and fourth declarations, held that an assignment
for the purpose of delaying creditors twelve months,
or indefinitely, until business improved, or until such
time as the property should so advance in value as to
pay all the debts of the debtor, would be an unreason-
able delay, and therefore fraudulent.

The law, as held by the trial court, and applied to
the evidence, was in favor of the plaintiff, both as to
the question of actual fraudulent intent and such
unreasonable postponement of payment as to constitute
fraud in law, following on those questions the law of
the case as contended for by the plaintiff below. On
these two points that court, however, evidently held the
evidence not to prove either actual fraudulent intent, or

INSTRUCTIONS.

such unreasonable delay as to amount to fraud in law; otherwise the court would have found for plaintiff on that branch of the issue. The finding of the court on the weight of evidence is discussed at some length in the former opinion, but the action of the court below for an alleged error as to the conclusions to be drawn from the evidence is not reversible here, if there is any substantial evidence in support of the finding of the court below. The inquiry before this court is whether the trial court erred in its refusal to give the instructions, or to declare the law to be as asked by the plaintiff. If the court below had found the evidence to have proven that the defendants intended to make such an assignment of their property as to delay their creditors in the collection of their debts twelve months, or so as to create an unreasonable delay, it would certainly have found for the plaintiff, under the view of the law declared by that court in the points held, or the instructions given. If, however, the court found that the evidence proved an intention on the part of the defendants, before the writ of attachment issued, to make an assignment of their property, which would create but slight delay, and also held that such an assignment was not fraudulent in law, such finding would have been, as it was, for the defendant, because the law, as declared by the trial court upon such a state of facts, would be with the defendant. The record is silent, except as the same may be inferred, as to the actual views entertained by the trial judge at the trial, as it only shows on that question that the case was tried at the special September term; taken under advisement; and on the fourteenth day of October, 1886, a general finding for the defendant entered; so we are unable to determine, even if the question were important, whether the ruling here is placed on the same ground as that upon which the cause was determined below. It seems to us unimportant as to the ground

on which the trial court predicated its action, as the question here is, does there exist reversible error in the record. If the defendant in error had rested his cause here upon the single point that the court could not review the proceedings below, even then, if the court deemed that contention not well taken, it would not be justified in reversing the cause, unless some error was found in the record, and would be bound, before reversing, to examine the whole record to determine whether reversible error was apparent. Certainly this court could not reverse the cause merely because it deemed its powers of review to be greater than defendant's argued in one point of their brief. Nor could the court reverse the cause if, in its judgment, the court below decided right, even though this court should be of opinion that the decision below was placed on wrong grounds. In the opinion originally announced, the instructions refused are set out. A consideration of the instructions given will throw some light upon the point in the mind of the trial court at the time of its refusal to give the instructions about which complaint is now made. It is evident by the instructions declared that the court below on the trial of the cause had in mind the question considered in the opinion in this cause, which we are now asked to withdraw or modify. The court below refused to declare the law as stated in the second, fifth, and sixth propositions asked, but held the law to be as stated in the third, fourth, and seventh propositions. These various propositions are here treated as instructions asked, as the cause was tried without the intervention of a jury, and asking the court to declare the law was equivalent to asking an instruction. The points of law given or declared, and held on the trial to be applicable to the evidence asked for by the plaintiff, are as follows: "Third. If it appears from the evidence in this cause that the defendants were about to make an assignment of their property for the pur-

pose of deferring payment of any or all of their creditors for a period of twelve months, or until business improved, then such intention on the part of defendants was a sufficient warrant to plaintiff in suing out the writ of attachment in this cause, and the finding should be for the plaintiff. Fourth. If it appears from the evidence in this cause that the defendants, before suing out the writ of attachment herein, were about to make an assignment of their property to prevent a sacrifice thereof, and that the intention existed in the minds of the defendants, or either of them, to place their property beyond the reach of their creditors, or any of them, until such a time as it should advance in value, or until business should improve, or times get better, then the finding should be for the plaintiff, even though it was the intention of the defendants ultimately that their creditors should receive the entire proceeds of a sale of their property." "Seventh. Any assignment contemplated by the defendants, the reasonable and probable result of which was to defraud their creditors in the collection of their debts, is sufficient to sustain the attachment in this cause."

In this connection it may be observed that the plaintiff in error, in his argument for rehearing, says: "Is this court prepared to say that an assignment whereby the assignor retains dominion over his property, and prevents his creditors from the collection of their debts for a period of twelve months, is not, under the decision of every respectable court in Christendom, including Missouri, fraudulent in law?" This court has certainly not said so, either in terms or in effect, and the trial court on the hearing expressly declared the contrary doctrine, as appears by a careful reading of the third and fourth points, or instructions, above set out. The court on the trial as to that question of law was evidently with the plaintiff, but against him on the evidence relating to that proposition; but on the point

that delay merely, such delay as might reasonably be necessary to convert the defendant's goods into cash to pay debts, embraced in all the points refused by the court, but more clearly in the fifth and sixth, the court below was against the plaintiff in error on the law, but might have been with him as to the facts relating to that question. A careful reading of the instructions asked on the trial by the plaintiff makes it apparent they were critically drawn, and so considered on the trial. The fifth and sixth instructions are in exactly the same language, except that in the fifth the word "hinder" is used, while in the sixth the word "delay" is found, evidently on purpose, to raise and save any question that might exist as to the meaning of the two words. In the first and second instructions the words "hinder" and "delay" are both used, with the addition of the words "or defraud," so that in each of the four instructions refused is contained the proposition that, if the defendants were about to sell, convey, assign, or dispose of their property, so as to delay, even in the least degree, their creditors, such an act would be fraudulent. The instructions embracing that proposition of law were refused, presumably because the court below, whatever its opinion might be as to the facts relating to the proposition of law, did not believe that a sale of the defendant's property, or an assignment thereof, creating slight or necessary delay incident to a conversion of the property into money, was fraudulent in law. The third and fourth points, or instructions asked and given, relate also to the question of delay. The third expresses the idea of delay in the words, "deferring payment of their creditors, or until business improved," while the fourth expresses the idea of unreasonable delay in this way: "That the intention existed in the minds of the defendants, or either of them, to place their property beyond the reach fo their creditors, or any of them, until such time as it

should advance in value, or until business should improve, or times get better, then the finding should be for plaintiff." It will thus be seen that the instructions contained a clear distinction between the effect of delay merely in the assignment, such delay as is necessary, usual, and reasonable, to enable the debtor to convert his assets in that way into cash, and such unreasonable and unusual delay as would unjustly postpone the creditor in securing payment, and therefore operate on him as a fraud. This distinction is made very apparent by contrasting the third and fourth instructions given with the fifth and sixth refused. In view of the terms of these instructions, it does not seem to us that the contention in the petition for a rehearing that the court in the original opinion departed from the question before the trial court, is well founded. As the opinion heretofore filed sustains the trial court on the questions of law, it may be that the points relating to the evidence might have been more briefly disposed of by a mere reference to the rule that this court will not reverse on any question relating to the weight of the evidence, where there is substantial evidence to support the action of the court below; but this court, properly, as we think, was of opinion that some consideration of the evidence would throw light on the questions involved, and be more satisfactory to those interested.

Complaint is made of the following statement in the opinion: "The court below was not asked to declare that every assignment having the effect to create an unreasonable delay to the creditors should be held fraudulent, but to so declare if the assignment resulted in delay merely, however short the time might be, or however beneficially it might result to the creditors." The statement in the original opinion is evidently an inadvertence of statement, and, in view of the third and fourth declarations heretofore set out, the opinion

heretofore rendered is so far modified as to withdraw therefrom the above quoted expression, which no doubt unintentionally found its place in the opinion heretofore rendered. This, however, in no way affects the reasoning of the opinion, or the conclusion reached; but is a mere modification of an unintentional expression made by the court in the course of statement.

It is strongly urged by the plaintiff that the supreme court of the United States holds a doctrine at variance with that declared by this court; and we are especially referred to the case Means v. Dowd, 128 U. S. 280, as supporting the plaintiff in his application for rehearing. We have carefully examined that case, and are of the opinion that the general expressions used by the court therein must be considered, when it is looked to as authority, with reference to the instrument then under consideration, to determine the point really decided by the court. The facts of that case, as they appear in the record, are the following: April 24, 1876, Montgomery & Dowd were merchants in North Carolina, greatly embarrassed, and they made a conveyance of all their goods and property to other parties, Davidson & Dowd. It was provided in the assignment that the assignors, Montgomery & Dowd, should remain in possession of the assigned property, and continue to sell the same at their own discretion, and collect the moneys therefor. The funds so collected were to be by the assignees deposited weekly in bank, and the stock from time to time replenished from the proceeds of the sales, under the direction of the assignees; the assignees were to be paid their commission; and, after expenditures for replenishing stock and incidental expenses, the surplus was to be applied to the payment of certain preferred debts, first, and finally the residue to general creditors, with the remainder, if any, to assignors. This all appeared upon the face of the assignment, the validity of which the supreme court had under consideration.

In addition, the facts established, as throwing light upon the instrument, that the preferred creditors were the near relatives of the debtors. The instrument, although made in April, 1876, was not placed on record until July of the same year, and the assignors, from April to the last named date, remained in the actual control of the property assigned, selling the same in the usual course of business, collecting the proceeds of such sales, and carrying on the business generally, under the protection afforded by the deed of assignment. This is the kind of instrument which the supreme court in that case, under the circumstances stated, had under consideration, to which it gave construction holding the same to be fraudulent. The language used by the court should be considered with reference to the instrument being construed, and not as intending to give a general rule for the construction of conveyances or assignments wholly different in important particulars, from the one then in the mind of the court. The fact that the assignors, Montgomery & Dowd, were to remain in possession of the goods, carry on business as usual, make collections, replenish stock, etc., under cover of the assignment, make it clearly apparent that the instrument under consideration in that case was on its face fraudulent; and under like circumstances this court would be bound, not only upon the authority of Means v. Dowd, but also in view of other cases giving construction to like instruments, to hold a like rule. But in the case here there is nothing from which this court, against the finding of fact by the court below, can say that any such device was intended by the defendants in error. If it was clearly apparent that the defendants in this case intended such unreasonable delay as that contemplated by Montgomery & Dowd, of course the rule there adopted would be applied. In that case, in the view of the court the instrument was so fraudulent upon its

face that the court said with respect thereto: "In the case before us the whole face of the instrument has the obvious purpose of enabling the insolvent debtors who made it to continue in their business unmolested by judicial process. * * * It specifically provides that the grantors should remain in possession of said property and choses in action, with the right to continue to sell the goods and collect the debts under control of the grantees. * * * It is difficult to imagine a scheme more artfully devised between insolvent debtors and their preferred creditors to enable the former to continue in business, at the same time withdrawing their property used in its prosecution from the claims of other creditors, which might be asserted according to the usual forms of law." In view of the facts of that case, and the expressions of the court upon the case as a whole, together with what the court has said and decided in other causes on the same subject, both before the decision of Means v. Dowd and since that time, it does not seem to us that the court decided, or intended to decide, that the mere slight delay necessarily incident to conversion of the property of the debtor by assignee, whereby to apply the same to the payment of his debts, amounts to fraud in law; and that principle is the one embraced in in the instructions which the court refused to give, and about which complaint is made, in the cause now in this court under consideration.

In Brashear v. West, 7 Pet. 608, the supreme court upholds an assignment tending in a considerable degree to delay creditors in the collection of their debts by the usual process of law, and in the course of discussion makes the following statement, in speaking of the assignment in that case: "It is also objected that the assignment is in general terms. That a general assignment of all a man's property is per se fraudulent has never been alleged in this country. The right to make

it results from that absolute ownership which every man claims over that which is his own. That it is a circumstance entitled to consideration, and in many cases to much consideration, is not to be controverted. If a man were to convey his whole estate and afterwards to contract debts, there would be much reason to suspect a secret trust for his own benefit. The transaction would be closely inspected, and a sweeping conveyance of his whole property would undoubtedly form an important item in the testimony to establish fraud. So in many other cases which might be adduced; but a conveyance of all his property for payment of his debts is not of this description. It is not of itself calculated to excite suspicion. Creditors have an equitable claim on all the property of their debtor; and it is his duty, as well as his right, to devote the whole of it to the satisfaction of their claims. The exercise of this right by the honest performance of this duty can not be deemed a fraud. If transferring every part of his property, separately, to individual creditors, in payment of their several debts, would be not only fair, but laudible, it can not be fraudulent to transfer the whole to the trustees for the benefit of all. In England such an assignment could not be supported, because it is by law an act of bankruptcy, and the law takes possession of a bankrupt's property, and disposes of it; but in the United States, where no bankrupt law exists for setting aside a deed honestly made transferring the whole of the debtor's estate for the payment of his debts, the preference given in this deed to favored creditors, though liable to abuse, and perhaps to serious objection, is the exercise of a power resulting from the ownership of property which the law has not yet restrained. It can not be treated as a fraud."

Mayer et al. v. Hellman is a case in point. On the third of December, 1873, George Bogen and Jacob Bogen, composing the firm of G. & J. Bogen, and the

same parties, with Henry Muller, composing the firm of Bogen & Son, by deed executed of that date, individually and as partners, assigned certain property held by them, including that in controversy in the case, to three trustees, in trust for equal and common benefit of all their creditors. The deed was delivered upon its execution, and the property taken possession of by the assignees. To carry out this assignment necessarily involved a delay to the creditors, such a delay as would enable creditors to convert the property into cash for distribution for payment among creditors. As a matter of fact, some six months did occur before any effort was made to disturb the assignees. More than six months after the execution of the assignment a petition was filed in the district court of the United States, controverting the right of the assignee to hold the property, and in the last named court an assignee in bankruptcy was appointed to take possession of all the assigned property, and administer the same under the bankrupt law then in force. This assignee brought his action against the first assignee to procure possession of the property assigned to him by virtue of the assignment therein dated December 3, so that the question arose as to the legality of the first assignment. The contention was that the first assignment was fraudulent and void, and title was in the assignee under the second assignment. The court held, however, that the first assignment, although it disposed of all of the assignee's property in such a way as to create some delay, was not fraudulent and void, but to the contrary, and upheld the first assignment. It is said by that court, Mr. Justice FIELD delivering the opinion: "The validity of the claim of the assignee in bankruptcy depends, as a matter of course, upon the legality of the assignment made under the laws of Ohio. Independently of the bankrupt act, there could be no serious question raised as to its legality. The power which every one possesses

over his own property would justify any such disposition as did not interfere with the existing rights of others; and an equal distribution by a debtor of his property among his creditors, when unable to meet the demands of all in full, would be deemed, not only a legal proceeding, but one entitled to commendation. Creditors have the right to call for the application of the property of their debtor to the satisfaction of their just demands; but, unless there are special circumstances giving priority of right to the demands of one creditor over another, the rule of equity would require the equal and ratable distribution of the debtor's property for the benefit of all of them. And so, whenever such a disposition has been voluntarily made by the debtor, the courts in this country have uniformly expressed their approbation of the proceeding. The hindrance and delay to particular creditors, in their efforts to reach before others the property of the debtor that may follow such a conveyance, are regarded as unavoidable incidents to a just and lawful act, which in no respect impair the validity of the transaction."

Applying the statement of the supreme court of the United States to the terms of the instructions which the court below in this case refused to give, it will be observed that the very hindrance and delay which the court below was asked to declare to be a fraud in law our court of last resort declared not to be so, and it is this distinction between a delay so great and unreasonable in character as necessarily to work injury to the creditor, and slight and necessary delay, incident to the conversion of property into cash, stated by the supreme court in Mayer v. Hellman, which this court had in view in the original opinion, as applied to the proposition of law embraced in the instructions refused. It will be borne in mind that in Mayer v. v. Hellman the assignee under the second assignment began his proceeding in the district court of the United

States against the first assignee to recover the property, and one of the theories sought to be maintained by the plaintiff in that case was that the first assignment was absolutely void. The district court took that view of the question, and decided against the first assignee, who carried the case to the supreme court of the United States, and there the ruling of the district court was reversed, and the law held to be in favor of the first assignee. In discussing the question in that case in the supreme court, an argument is made which clearly indicates that the exact point in the mind of that court is as to the fraudulent character of the first assignment. The court observed: "The counsel of the plaintiffs in error have filed an elaborate argument to show that assignments for the benefit of the creditors generally are not opposed to the bankrupt act, though made within six months of the filing of the petition. Their argument is that such an assignment is only a voluntary execution of what the bankrupt court would compel; and as it is not a proceeding in itself fraudulent as against the creditors, and does not give a preference to one creditor over another, it conflicts with no possible inhibition of the statute. There is much force in the position of counsel, and it has the support of a decision of the late Mr. Justice NELSON in the circuit court of New York in Sedgwick v. Place, and of Mr. Justice SWAYNE in the circuit court of Ohio in Langley v. Perry, 2 N. B. R. 180. Certain it is that such an assignment is not absolutely void."

In the case we are considering, the proposition of law clearly involved in the instruction which the court refused to give seems to us to be set at rest by the declaration of the supreme court of the United States that such delays as are unavoidable incidents through a lawful act in no respect impair the validity of the transaction. Reed v. McIntyre, 98 U. S. Rep. 507, also sustains the opinion heretofore rendered in

this court in the cause under consideration. Reed v. McIntyre was commenced in the circuit court of the United States for the district of Minnesota. Substantially the facts were that William H. Shuey, a merchant of St. Paul, executed in March, 1874, a deed of assignment conveying his entire property to William S. Combs, in trust for the equal benefit of all his creditors. Upon the same day, immediately after the acknowledgment of the deed of assignment, Combs' assignee entered upon the discharge of his duties as such, and took possession actually of Shuey's stock of goods. During the succeding day Mrs. Reed obtained a judgment in one of the state courts of Minnesota against Barnard & Shuey for the sum of $5,000. She immediately issued execution on her judgment, and levied the same on the stock of goods belonging to Shuey in the hands of Combs, the assignee.

The question arose in the circuit court of the United States as to the legality of the assignment to Combs. The circuit court upheld that assignment. Mrs. Reed appealed. On this appeal the supreme court also sustained the assignment to Combs, as being legal and binding. It is said by the court in the opinion: "It is stated in the printed argument of counsel for the appellee that the statement is not controverted by opposing counsel that, at the date of the assignment to Combs, there was no statute of Minnesota relating to assignments by debtors for the benefit of creditors. In determining, therefore, the validity and effect of the assignment in question, we must look to the doctrines of the common law, and to the provisions of the bankrupt act. * * * The right of a debtor at common law to devote his whole estate to the satisfaction of the claims of creditors results, as Mr. Chief Justice MARSHALL declares, 'from that absolute ownership which every man claims over that which is his own.' Brashear v. West, 7 Pet. 608; Mayer v. Hellman, 91 U. S.

496. Assignments of property for such purposes, not made with the intent to hinder, delay, or defraud creditors, were upheld at common law, even where certain creditors were preferred in the distribution of the debtor's effects. Nor, according to the doctrine of the common law, could the validity of the assignment to Combs be assailed simply because its effect was to prevent the appellant obtaining, by judgment and execution, a priority and preference over other creditors. An assignment which had the effect to delay a creditor in the enforcement of his demand by the ordinary process of law was not for that reason alone fraudulent and void. If not made with the intent to hinder, delay, or defraud creditors, it was sustained at common law. Such an intent was often conclusively presumed, if the assignment contained provisions inconsistent with good faith, or so unreasonable or unusual in their character as to justify the conclusion that it was, in the language of Lord MANSFIELD in Cadogan v. Kennett, a mere trick or contrivance to defeat creditors. But where its provisions were consistent with an honest purpose to deal fairly and justly with them, the deed reserving, for the benefit of the debtor or his family, no control over, or interest in, the property, and imposing no improper restrictions upon its speedy sale and distribution in satisfaction of the debts, the consequent temporary interference with the prosecution by particular creditors of their claims by the ordinary legal remedies was regarded at common law as a necessary and unavoidable incident in the discharge by a debtor of his duty to creditors. Mayer v. Hellman, supra. Such interference was not regarded as hindrance and delay, within the meaning of the statutes against fraudulent conveyances.  *  *  *  Our conclusion, therefore, is that the assignment to Combs could not, upon common law principles, be impeached simply because it had the effect to prevent the appellant, by means of

the execution levy, from securing priority over all other creditors."

So it may be said in the case now under consideration, even if the evidence proved—a question it was for the court below to determine—that the defendant in error contemplated such an assignment as would prevent the appellant, by means of the attachment levy, from securing priority over all other creditors on common law principles, the transaction could not be impeached for that reason, and in so dealing this court would have the support of the authority above quoted. The authority will appear more applicable when it is remembered that in this territory, when this cause was commenced, there was no statute regulating assignments, and the question here, as in the Minnesota case above cited, must be determined on common law principles. In a later case (Peters v. Bain, 133 U. S. 685) the same question is again considered. The court says: "The deed of assignment was attacked as fraudulent in law and in fact. We understand counsel to contend that the deed contains certain provisions which must so hinder, delay, and defraud creditors that fraud in its execution is to be conclusively presumed without regard to the intention of the parties. The doctrine in Virginia, settled by a long and uninterrupted line of decisions, is that, while there may be provisions in a deed of trust of such character as of themselves to furnish evidence sufficient to justify the inference of a fraudulent intent, yet this can not be so, except where the inference is so absolutely irresistible as to preclude indulgence in any other; hence, provisions postponing the time of the sale, and reserving the use of the property of the grantor meanwhile, though perishable and consumable in use; permitting sales on credit; for the payment of surplus after satisfaction of creditors secured; the omission of a schedule or inventory, and the like—have been regarded as insufficient to justify

the court in invalidating the deed for fraud in point of law. The fraudulent intent is held not to be presumed, even under such circumstances, and, in its absence, the fact that creditors may be delayed or hindered is not of itself sufficient to vacate the instrument." The court not only thus recognizes and applies the established law of Virginia on that subject, but also in its discussion considers the question somewhat upon its own merits. The court adds: "The question is not whether the trustees might prove unfaithful—a contingency of which there is no intimation here—but whether the provisions of the deed, if carried out according to their intent, would be fraudulent in their operation." In view of the authorities cited, and others DEED of assignment: examined and not cited, this court delay: fraud. remains of the opinion that it is a safe and sound doctrine to hold that a conveyance, otherwise honest and in good faith, of the property of a debtor for the purpose of applying the same to the payment of his debts, but involving some slight incidental delay, necessary to the conversion of the same, by reasonable and fair means, into cash with which to pay debts, is not because of such delay fraudulent in law, and hence the petition for rehearing is overruled.

O'BRIEN, C. J., and McFIE and SEEDS, JJ., concur.